DISTRICT COURT
HERN DISTRICT OF TEXAS

**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

AUG 2 1 2012

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

LEO WATSON, ET AL.,  §
                     §
VS.                  §    ACTION NO. 4:11-CV-301-BJ
                     §
AURORA LOAN SERVICES LLC, ET AL.  §

**MEMORANDUM OPINION AND ORDER**
**PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND REQUIRING ADDITIONAL BRIEFING**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Aurora

Loan Services LLC on February 3, 2012 [doc. # 30]. Having carefully considered the motion and

response, the Court concludes that Defendant's motion should be PARTIALLY GRANTED.

**I. RELEVANT FACTS**

In October 2006, Plaintiffs purchased real property located at 2702 Ursula Court in

Mansfield, Texas. (Plaintiff's Original Petition ("Pl.'s Pet.") at 2.) According to Plaintiffs,

Defendant Aurora Loan Services LLC ("Aurora LLC") agreed to finance the purchase for the

principal amount of $370,000, which was secured by a Note and Deed of Trust,[1] and Defendant

Aurora Loan Services, Inc. ("Aurora Inc.") agreed to be the mortgage servicer of said mortgage.[2]

(Pl.'s Pet. at 3. *See* Defendant's Brief in Support of Motion for Summary Judgment ("Def.'s Br.")

at 2.)

Plaintiffs failed to make payments on the mortgage in 2008, defaulting on the loan. (Def.'s

Br. at 2; *see* Pls.' Pet. at 3.) In 2008, Plaintiffs also filed for Chapter 11 Bankruptcy, which was later

dismissed, refiled, and converted to a Chapter 7 proceeding because of the alleged "malfeasance of

Plaintiffs' bankruptcy attorney." (Pl.'s Pet. at 3-4; *see* Def.'s Br. at 2.) As a result of their

---

[1]The Court notes that the Note and Deed of Trust were between Plaintiffs and AmericaHomeKey Inc. (Defendant's Appendix to Motion for Summary Judgment ("Def.'s App."), Ex. F.)

[2]According to Defendants' Answers and Objections to Plaintiffs' Request for Interrogatories, Defendant Aurora Loan Services, Inc. does not currently exist. (Plaintiffs' Appendix to Response to Defendant's Motion for Summary Judgment ("Pls.' App.") at 21.) Apparently, "Aurora Loan Services LLC was formerly known as Aurora Loan Services, Inc." (*Id.* at 2.) Thus, any ruling on Defendant Aurora LLC's Motion for Summary Judgment applies to both named Defendants. The Court will refer to "Defendant" throughout unless quoting a party's submission.

1

bankruptcy filing, Plaintiffs allegedly entered into negotiations with Defendants to restructure their mortgage and asked Defendants for an accounting of all mortgage payments that had been made. (Pl.'s Pet. at 3.) Plaintiffs claim that, "[d]espite repeated requests, both oral and written, Defendants failed and refused to provide such an accounting." (Pl.'s Pet. at 3.)

On October 12, 2010, Defendant Aurora LLC and Plaintiff Dora Watson entered into a Foreclosure Alternative Agreement ("Agreement"), which Plaintiffs allege was entered into under duress. (Pl.'s Pet. at 4; *see* Def.'s App., Ex. C.) Paragraph 1 of this Agreement stated, "If the Customer was discharged in a Chapter 7 proceeding subsequent to the execution of the Loan Document, Lender agrees that the Customer will not have personal liability on the debt pursuant to this Agreement." (Def.'s App., Ex. C at 1.) The Agreement also stated that Dora Watson was in default under the loan documents. (Def.'s App., Ex. C at 1.) In addition, the Agreement required Dora Watson to make a $6,000 payment on or before October 20, 2010 and make five consecutive payments of $5,295.28 on or before the 15th of every month, beginning November 15, 2010. (Def.'s App., Ex. C at 6.) The Agreement further stated:

> 6. Default. If customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even[t] hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

(Def.'s App., Ex. C at 3.)

Plaintiffs made the required payments in October and November 2010. However, they were unable to timely make their December payment and allegedly contacted Defendant Aurora Inc. several times in an attempt to obtain additional time to make the payment and/or reach a new agreement regarding the payments. (Pls.' Pet. at 5.) In one conversation, Dora Watson asserts that she was informed that the Agreement had been cancelled. (Pl.'s Pet. at 5.)

2

Also, on October 12, 2010, the United States Bankruptcy Court for the Northern District of Texas issued an Order stating that "the automatic stay did not go into effect upon the filing of this case on August 3, 2010, and Aurora Loan Services, LLC, its successor and/or assigns may take any and all steps necessary to exercise any and all statutory and contractual rights it may have in the property located at 2702 Ursula Court, Mansfield, TX 76063."[3]   The Order further stated that "Movant may exercise its remedies available under state law, up to and including foreclosure of its mortgage against the Debtors' interest in the property."[4]   (Def.'s App., Ex. D (emphasis omitted).)

In a letter dated February 22, 2011, Defendant Aurora LLC sent letters to Plaintiffs notifying them that their loan was in default, explaining their right to cure the default, and informing Plaintiffs that if they failed to bring their loan current then Defendant would start legal action to foreclose on the "Mortgage/Deed of Trust."[5]   (Def.'s App., Ex. E, *see* Pls.' Pet. at 6; Pls.' Ap. at 31-34.)   In letters dated March 2, 2011, Defendant Aurora Inc.'s attorney sent Plaintiffs a "Fair Debt Collection Practices Act Notification" that stated that the law firm "has been requested to pursue foreclosure

---

[3]This order was issued in response to a Motion to Confirm Absence of Stay Pursuant to 11 U.S.C. § 362(c)(4)(A)(i) filed by Aurora LLC on August 30, 2010.

[4]The Court notes that the Defendant, in its motion, refers to an order entered on January 12, 2011 by the United States Bankruptcy Court for the Northern District of Texas.  However, the movant that this order relates to is Onewest Bank, F.S.B. as servicers for Deutsche Bank National Trust Company, as trustee of the Indymax Indx Mortgage Loan Trust 2006-AR14, mortgage pass through certificates, series 2006-AR14 under the Pooling and Servicing Agreement dated October 1, 2006, its assigns and/or successors in interest.  The Court has access to the docket sheet of the Plaintiffs' bankruptcy cause, which was filed in this district, and, thus, takes judicial notice of the order from the bankruptcy court that actually relates to Defendant. *See* Fed. R. Evid. 201; *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (holding that a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings but not of the factual findings of another court because those do not constitute facts not subject to reasonable dispute within the meaning of Rule 201); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D. Tex. 2001) ("When a court takes judicial notice of public documents or documents from another court, it may only take notice of the undisputed facts therein, which do not include the 'facts' asserted in various affidavits and depositions."); *In re Am. Int'l Refinery*, 402 B.R. 728, 749 (Bkrtcy. W.D. La. 2008) ("A court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court."); *In re Arhens*, 120 B.R. 852, 854 (Bkrtcy. S.D. Tex. 1990) ("This court may take judicial notice of the docket entries and pleadings filed in civil actions, bankruptcy cases, and adversary proceedings in this District.").

[5]In letters dated February 24, 2011, Defendant also sent a payoff statement to Plaintiff Dora Watson regarding the Plaintiffs' loan.  (Pls.' App. at 35-45.)

3

processing in accordance with the terms of the Note and Deed of Trust and applicable law." (Pls.'

Pet., Ex. B; Pls.' App. at 46, 50, 54, 57.)[6]  In addition, this letter stated:

> Our firm is not required to wait until the end of the thirty-day period before pursuing
> foreclosure processing.  However, if you request from our firm proof of the debt or
> the name and address of the original creditor within the thirty day period that begins
> with your receipt of this letter, our firm will cease foreclosure processing until we
> mail or otherwise provide the requested information to you.

(*Id.*)

In a letter dated March 24, 2011, Plaintiffs sent a response to Defendant Aurora Inc's attorney

"requesting an accounting of Plaintiffs' payments and requesting verification of the debt alleged in

Defendant's attorney's [February 22, 2011] letter to be owed by Plaintiffs."[7] (Pls.' Pet. at 6; *see* Pls.'

Pet., Ex. C.)  Plaintiffs were discharged from bankruptcy on March 29, 2011.  (Def.'s Br. at 2.)

On April 4, 2011, Plaintiffs filed suit in the 96th Judicial District of Tarrant County, alleging

claims for breach of contract, violation of the Texas Deceptive Trade Practices Act, and violations

of the Federal and Texas Fair Debt Collection Practices Acts.  In addition, Plaintiffs requested an

accounting and injunctive relief, including a temporary restraining order.  The Tarrant County

District Court, in an order dated April 4, 2011, granted Plaintiffs' request for a temporary restraining

order preventing Defendants from conducting the foreclosure sale.  (Notice of Removal, Ex. B3.)

The temporary restraining order was extended several times.  (*See* Notice of Removal, Ex. B4-B8.)

Thereafter, on April 14, 2011, Defendant filed a Notice of Acceleration and Notice of Trustee's Sale

---

[6]The Court notes that the exhibits that Plaintiffs attached to their response to Defendant's motion for summary judgment are poorly organized and not properly labeled.  This makes it very difficult for the Court to properly cite to the referenced document.

[7]The March 24, 2011 letter from Plaintiffs stated:

> Please accept this letter as our formal written notification to notify you that we (Dora Watson
> and Leo Watson) dispute both the $147,721.96 and the $505,349.26 debt amounts listed in your letter
> received March 23, 2011, as an amount owed.

> The $147,721.96 and the $505,349.26 are not accurate amounts owed on Loan No.
> 0033411869.  We are requesting that you cease collection (any foreclosure process) of the debt and
> send confirmation that you have ceased collection of the debt to Dora Watson and Leo Watson, 2702
> Ursula Court, Mansfield, Texas 76063.  In addition, proof of the debt.

(Pls.' Pet., Ex. C (emphasis omitted).)

with the Tarrant County Clerk's office, noticing Plaintiffs' property for public auction on May 6, 2011.[8] (Def.'s Br. at 3.)

Defendants, on May 5, 2011, removed the case to this Court. In a letter dated May 17, 2011, Defendant's attorney sent a "Debt Validation Request Response" to Plaintiffs' attorney that provided the requested "default cure and payoff information from [Plaintiffs'] lender." (Def.'s App., Ex. F.) Defendant's attorney sent a "Loan Payoff Inquiry Response" to Plaintiffs' attorney that was also dated May 17, 2011. (*Id.*)

## II. LEGAL STANDARD

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact. Fed. R. Civ. P. 56(c); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, which strive "to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, [afford] a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

All of the evidence must be viewed in a light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (citations omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party moving for summary judgment meets its burden by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material

---

[8] In its brief, Defendant's state that the sale was to take place on May 6, 2008. (Def.'s Br. at 3.) The Court assumes that this is a typographical error and that the correct date should be May 6, 2011.

fact issues. *Celotex*, 477 U.S. at 323. A party demonstrates that no genuine issue of material fact exists through the pleadings, depositions, admissions, and affidavits. Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden shifts to the nonmovant, who must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To do this, the nonmovant "must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must demonstrate that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. The Court may not make credibility determinations when conflicting evidence is presented. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir.1993). The nonmovant cannot, however, survive a summary judgment motion by merely resting on the allegations contained in her pleadings. *Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. <u>Breach of Contract Claim</u>

In their petition, Plaintiffs set forth two alleged incidents of breach of contract. First, Plaintiffs claim that Defendant breached paragraph 1 of the Agreement, which stated that "Plaintiffs would not be held personally liable for the arrears as a result of their discharge in bankruptcy," by Defendant's attempt "to collect a debt on the mortgage arrears." (Pls.' Pet. at 7.) Second, Plaintiffs claim that Defendant's act of mailing the Fair Debt Collection Practices Act Notification letters dated March 2, 2011 to Plaintiffs was also a breach of the Agreement. (Pls.' Pet. at 7.)

To prevail on their breach-of-contract claim, Plaintiffs must show: (1) the existence of a valid and enforceable contract; (2) Plaintiffs performed under the contract; (3) Defendant did not perform under the contract; and (4) Plaintiffs suffered damages as a result of Defendant's breach. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.--Houston [1st Dist.] 2009, pet denied). *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.--El Paso 2009, no pet.); *Snyder v. Eanes Indep.*

*Sch. Dist.*, 860 S.W.2d 692, 695 (Tex.App.--Austin 1993, writ denied.)  In its motion, Defendant

claims it is entitled to summary judgement because Plaintiffs have provided no evidence that it

violated element three by not performing under the contract. (Def.'s Br. at 4.)  Defendant argues that

Plaintiffs have misinterpreted paragraph 1 of the Agreement.  Specifically, Defendant states:

> Defendant's legal remedy of foreclosure does not seek to recover a debt from the
> Plaintiffs personally.  Rather, it is a legal remedy pursuant to the security instruments
> attached to the property.  The right under the Deed of Trust to recover the property
> subject to a lien, was not in violation of the Foreclosure Alternative Agreement, but
> rather a remedy that had already been confirmed as available to the Defendant
> through the Order Confirming Status of Automatic Stay issued by the United States
> Bankruptcy Court on January 6, 2011.[9]

(Def.'s Br. at 4.)

Plaintiffs, on the other hand, argue that they are not complaining "that Defendant breached

the relevant provision of the Foreclosure Alternative Agreement by pursuing to foreclose against

Plaintiffs' property." (Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Pls.'

Resp.") at 3.)  Rather, Plaintiffs allege that "the evidence shows[] that Defendant breached the

provision by pursuing the full amount of the arrearages of Plaintiffs' mortgage loan which included

the amount discharged in their bankruptcy." (*Id.*).  In support, Plaintiffs include the affidavit of

Plaintiff Dora Watson in which she asserts:

> I did not hear from Defendant again until sometime in March, 2011 when I
> received a letter from Defendant's attorney demanding that we pay $147,721.96 or
> Defendant would foreclose against our home. . . .
>
> I then sent a written request to Defendant's attorney requesting an accounting
> of our payments because the information Defendant had sent to me did not show all
> the payments we have made to Defendant.  I also requested a verification of the debt
> alleged in Defendant's attorney's letter to be owed by me and my husband because
> it seemed to us that Defendant was attempting to collect some of the back payments
> and expenses which had been discharged in bankruptcy and which Defendant had
> agreed not to pursue against us.

(Plaintiffs' Appendix to Response ("Pls.' App.") at 4.)

Even viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that

Plaintiffs have failed to raise a genuine issue of material fact that Defendant breached a provision

---

[9]*See* footnote 4, *supra.*

of the Agreement. All of the evidence before the Court indicates that Defendant was not attempting to collect from Plaintiffs personally on the debt in violation of the Agreement but was, instead, following the required state procedures to foreclose on the property.[10] *See Stephens v. LPP Mortgage, Ltd.*, 316 S.W.3d 742, 746 (Tex. App.--Austin, 2010, pet. denied) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable."); *see, e.g.*, Tex. Prop. Code Ann. § 51.002 (West 2012). Furthermore, there is no evidence that Defendant was going to pursue a claim against Plaintiffs personally for any outstanding balance owed once it foreclosed on the property.

Furthermore, even assuming that Plaintiffs have raised a genuine issue of material fact regarding whether Defendant breached a provision of the Agreement, Plaintiffs have not raised any evidence that *they* performed under the contract as required to prove a breach of contract action against Defendant. *See, e.g., Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *10 (N.D. Tex. June 26, 2012). Instead, Plaintiffs admit that they were in default of the Agreement when they failed to timely make the December 15, 2010 payment. (Pls.' Pet. at 4-5 ("Plaintiffs made the October and November payments. However, the economy continued to decline and the economic downturn coupled with the conversion of Plaintiffs['] bankruptcy to a Chapter 7 caused Plaintiffs to be late with their December 2010 payment."). ) According to the terms of the Agreement, if Plaintiffs failed to make any of the specified payments, Defendant was entitled to terminate the Agreement and was permitted to "exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to

---

[10]The Court notes that the March 2, 2011 Fair Debt Collection Practices Act Notification that Plaintiffs complain about specifically states that Defendant's attorney, the author of the letter, had been hired to "pursue foreclosure processing." (Pls.' App. at 19.) In addition, the letter also states:

> If you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or an act to collect, assess, or recover all or any portion of the debt from you personally.

(*Id.* (emphasis omitted).)

[Plaintiffs]." (Def.'s App., Ex. C at 3.) Consequently, Defendant is entitled to summary judgment on Plaintiffs' breach- of-contract claim.

### B. Texas Deceptive Trade Practices Act ("TDTPA")

As to their claim for violations of the TDTPA, Plaintiffs allege, in their petition, that they "have made demands upon Defendants and have presented their claims to Defendants on numerous times including their letter to Defendant dated March 24, 2011." (Pls.' Pet. at 7.) Plaintiffs claim that "[d]espite these attempts, Defendants have failed and refused to resolve this matter" and have "engaged in a pattern of unconscionable conduct toward Plaintiffs in their breaches of contract, their acting in bad faith, and their refusal to comply with Federal and State laws, and in attempting to foreclose against Plaintiffs' property without seeking and obtaining permission of the bankruptcy court" in violation of the TDTPA. (Pls.' Pet. at 7.) In addition, Plaintiffs allege that Defendants have made material misrepresentations to Plaintiffs, which they have relied on. (*Id.*)

In its motion for summary judgment, Defendant argues that it is entitled to summary judgment because Plaintiffs have failed to prove that they are "consumers" as required to bring a claim under the TDTPA. (Def.'s Br. at 5.) Defendant argues that Courts in Texas "have ruled that Plaintiffs bringing a cause of action under the DTPA due to alleged wrongful foreclosure conduct by the Defend[an]t are not consumers under the DTPA." (Def.'s Br. at 6.) Plaintiffs, on the other hand, argue that Defendant is incorrect in its interpretation of Texas law and claim that "Texas Courts have ruled that a foreclosure that is unconscionable falls within the purview of the Texas DTPA." (Pls.' Resp. at 4.)

To establish a cause of action under the TDTPA, Plaintiffs must show that they are consumers under the Act. Tex. Bus. & Com. Code Ann. § 17.50(a); *see, e.g., Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)). A "consumer" is defined as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4). "To qualify as a consumer . . . 'the goods and services purchased or leased must form the basis of the complaint.'" *Hurd v. BAC*

*Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012) (quoting *Cameron v. Terrell & Garrett*, 618 S.W.3d 535, 539 (Tex. 1981)). "Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA." *Hurd*, 2012 WL 1106932, at *15 (citing *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992)). "However, a borrower may become a consumer if he or she seeks to acquire goods or services with the loan and the goods or services form the basis of his or her DTPA complaint." *Hurd*, 2012 WL 1106932, at *15; *see Flenniken v. Longview Bank & Trust* Co., 661 S.W.2d 705 (Tex. 1983). "The determining factor is whether the purchase or lease of a good or service was 'an objective of the transaction, not merely incidental to it.'" *Marquez v. Fed. Nat. Mortg. Ass'n*, No. 3:10-CV-02040-L, 2011 WL 3714623, at *5 (N.D. Tex. Aug. 23, 2011) (quoting *Fed. Deposit Ins. Co. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986)). Whether a person meets the requirements of being a consumer under the TDTPA is a question of law. *Manno v. BAC Home Loans Servicing, LP*, No. A-11-CA-347 LY, 2011 WL 3844900, at *3 (W.D. Tex. Aug. 26, 2011).

In this case, there is no evidence that Plaintiffs were seeking to purchase a good or service. Instead, Plaintiffs' allegations regarding their claim under the TDTPA appear to all relate to Defendant's actions in regard to the loan modification pursuant to the Agreement, not to the obligations between the parties arising from the original note and deed of trust that were signed in October 2006. (*See* Pls.' Pet. at 7.) In this way, the alleged violations of the TDTPA arise from the loan modification, which was not a part of the original financing scheme to acquire the house and was an entirely separate and distinct transaction. *See Ayers v. Aurora Loan Services, LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011). Consequently, Plaintiffs do not qualify as consumers under the TDTPA because they were not seeking a loan for the purposes of acquiring a good or service. Instead, Plaintiffs already owned the house subject to Defendant's mortgage interest and were seeking modification of an existing loan, which is similar to refinancing services. "Although one who borrows money to buy a house can be a consumer under the DTPA because that person's

objective is to buy a home, subsequent actions related to mortgage accounts--for example, extensions of further credit or modifications of the original loan--do not satisfy the goods or services element of the DTPA." *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 1012) (internal quotations and footnotes omitted); *see Ayers*, 787 F.Supp.2d at 455 ("Refinancing is simply an extension of credit that does not qualify Plaintiff as a consumer."); *Broyles v. Chase Home Finance*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011) ("subsequent actions related to mortgage accounts--for example, extensions of further credit or modifications of the original loan--do not satisfy the 'goods or services' element of the DTPA"); *Cavil v. Trendmaker Homes, Inc.*, No. G-10-304, 2010 WL 5464238, at *4 (S.D. Tex. Dec. 29, 2010) ("a mortgage or modification of a mortgage is not a good or service under the DTPA"). Thus, Defendant is entitled to summary judgment on Plaintiffs' TDTPA claim.

### C. **Federal Fair Debt Collection Practices Act and Texas Debt Collection Practices Act**

In their petition, Plaintiffs allege that Defendant violated the Federal and Texas Fair Debt Collection Practices Acts by engaging in the following: (1) using "false, deceptive, and misleading representations in connection with the collection of the mortgage debt" and (2) failing to provide Plaintiffs with an accounting and "a verification of the alleged debt within the time prescribed by law." (Pls.' Pet. at 8.) In its motion for summary judgment, Defendant claims that it is entitled to summary judgment on these claims because Plaintiffs have failed to show Defendant committed a wrongful act. (Def.'s Br. at 6.) Specifically, Defendant states that "Plaintiffs fail to allege with any particularity what representations by Defendants were misleading, much less any reliance or detriment related to the alleged misrepresentation." (Def.'s Br. at 7.) Defendant claims that it did, on May 17, 2011, respond to Plaintiffs' request for a debt verification and accounting. (*Id.*) Defendant argues that Plaintiffs have admitted that they were past due on their mortgage and had failed to comply with their obligations under the note, deed of trust, and Agreement. (*Id.*)

In their response, Plaintiffs claim that Defendant violated section 808(1) of the Federal Debt Collection Practices Act ("FDCPA") by "attempting to collect the fees, charges, and arrearages

11

which had been discharged in bankruptcy and which Defendant had agreed not to collect in the Foreclosure Alternative Agreement." (Pls.' Resp. at 7.) Furthermore, Plaintiffs argue that Defendant also violated section 809(b) of the FDCPA by failing to cease collection of the debt until it mailed verification of the debt to Plaintiffs. (Pls.' Resp. at 7.) Plaintiffs claim that Defendant admitted in its "answer to Interrogatory Number 13" that Plaintiffs made a valid request for verification of the debt and "Defendant failed and refused to honor it until May 17, 2012 which is after Plaintiffs filed the instant lawsuit."[11]   (*Id.*)

The FDCPA, 15 U.S.C. §§ 1692-1692p, is designed "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It "prohibits 'debt collectors' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). To support a claim under the FDCPA, plaintiff must show, based on an objective standard measured by the least sophisticated consumer, that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression, or abuse. *See Taylor v. Perrin, Landry, deLaunay and Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997); *Lee v. Credit Mgmt, LP*, No. G-10-538, 2012 WL 113793, at *4 (S.D. Tex. Jan. 13, 2012). Section 808(1) of the FDCPA, which can be found at 15 U.S.C. § 1692f, states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Furthermore, section 809(b) of the FDCPA, which can be found at 15 U.S.C. 1692g, states:

> (a) Notice of debt; contents

---

[11]In their response, Plaintiffs do not argue that Defendant violated any specific provision of the Texas Debt Collection Practices Act. Thus, the Court concludes that Plaintiffs are no longer pursuing any such claims. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (stating that plaintiff abandoned retaliatory abandonment claim when she failed to defend claim in response to motion to dismiss); *Vela v. City of Houston*, 276 F.3d 659, 678-9 (5th Cir. 2001).

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. §1692g.

As to 15 U.S.C. § 1692f(1), there is no evidence, as discussed above, that Defendant was attempting to collect any amounts that had been discharged in bankruptcy as Defendant was, instead, enforcing its rights to foreclose on the property pursuant to the terms of the Deed of Trust. Furthermore, as discussed above, Plaintiffs breached the Agreement in December 2010 when they

13

failed to make a required payment. Consequently, according to the terms of the Agreement, Plaintiffs were in default and the terms of the Agreement were no longer enforceable.

As to 15 U.S.C. § 1692g, based on the evidence before the Court, it appears that Defendant sent Plaintiffs notice of the debt in compliance with 15 U.S.C. § 1692g of the FDCPA on March 2, 2011. This letter, labeled a "Fair Debt Collection Practices Act Notification," included language stating that if Plaintiffs requested proof of the debt or the name and address of the original creditor within thirty days, then Defendant would cease foreclosure processing until they mailed or otherwise provided the requested information to Plaintiffs. (Pls.' Pet., Ex. B.) Thereafter, in a letter dated March 24, 2011, and within the thirty-day period described in 15 U.S.C. § 1692g, Plaintiffs sent Defendant a letter disputing the amounts owed, requesting that Defendant cease collection activities, and requesting "proof of the debt." (Pls.' Pet., Ex. C.) Nevertheless, it appears that Defendant, on April 14, 2011, filed a Notice of Acceleration and Notice of Trustee's Sale with the Tarrant County Clerk's office, noticing Plaintiffs' property for public auction on May 6, 2011. Defendant, did not, however, provide the Debt Validation Request until May 17, 2011. Based on the above evidence, the Court concludes that Plaintiffs have raised a genuine issue of material fact whether Defendants breached the FDCPA. Consequently, summary judgment on this specific FDCPA claim must be denied as the record stands at this time.

However, this does not end the Court's analysis of Plaintiffs' FDCPA claim. The Court notes that there is an issue as to whether Defendant's activities in this case even fall under the FDCPA. "Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It does not include a creditor attempting to collect a debt owed to them while using their own name or "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Miller v. BAC Home*

*Loans Servicing*, No. 6:11-CV-22, 2012 WL 1206510, at *4 (E.D. Tex. Mar. 23, 2012); *see* 15 U.S.C. § 1692a(6)(A) and (F)(iii). This provision has been construed to mean that a debt collector does not include the consumer's creditors, a mortgage company collecting debts, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *See Miller*, 2012 WL 1206510, at *4; *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 523 (E.D. La. 2009) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007). Furthermore, "[t]he activity of foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 627 (S.D. Tex. 2010); *see Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007), *Henry v. Chase Home Finance, LLC*, 2011 WL 6057505, at *6 (S.D. Tex. Dec. 6, 2011).

In this case, the evidence before the Court shows that the original note and deed of trust was between Plaintiffs and AmericaHomeKey, Inc. (Def.'s App., Exs. A & B.) However, there is no *evidence* that definitively explains the relationship between Plaintiffs and Defendant and shows the point in time that Defendant obtained its "ownership" in the note and deed of trust. Consequently, the Court cannot determine whether Defendant is statutorily exempt from liability as to Plaintiffs' FDCPA claim. However, in the interest of judicial economy, the Court finds that such issue should be resolved before trial and will order both parties to submit additional briefing on this issue.

### D. Request for an Accounting

Finally, in their petition, Plaintiffs set forth a claim entitled, "request for accounting." (Pls.' Pet. at 8 (emphasis omitted).) Plaintiffs claim that they have paid substantial sums of money to Defendant that "should have been applied to the outstanding balance of their mortgage." (Pls.' Pet. at 8.) Plaintiffs claim that, despite their numerous requests, "Defendants have failed and refused to make an accounting to Plaintiffs as to how their payments have been applied." (Pls.' Pet. at 8-9.) Plaintiffs request the Court "to order Defendants to make an accounting to Plaintiffs of all monies paid by Plaintiffs to Defendants." (Pls.' Pet. at 9.)

15

Defendant claims that it is entitled to summary judgment on this claim because a request for an accounting is not a recognized cause of action in Texas. (Def.'s Br. at 7.) Plaintiffs, on the other hand, argue that they do not need to address Defendant's argument because their request for an accounting is "clearly recognized under Federal law." (Pls.' Resp. at 8.) Specifically, Plaintiffs argue that they are entitled to an accounting under section 809(b) of the FDCPA and Section 6 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). (Pls.' Resp. at 8.)

Contrary, to Plaintiffs' arguments, an accounting is an equitable remedy that is not an independent cause of action. *See Henry v. CitiMortgage, Inc.*, No. 4:11-CV-083, 2011 WL 2261166, at *8 (E.D. Tex. May 10, 2011). Consequently, Plaintiffs' separate claim for an accounting cannot withstand Defendant's motion for summary judgment. Plaintiffs' request for an accounting in conjunction with section 809(b) of the FDCPA will be properly addressed in the continuing litigation of this claim, if any. Plaintiffs' request for an accounting pursuant to a claim under RESPA will not be considered as Plaintiffs never raised such a claim in their petition. *See Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 626-27 (N.D. Tex. 2010) ("[A]ny new claims raised in Plaintiff's Response are not properly before the Court and cannot create a genuine issue of material fact precluding summary judgment.").

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that Defendant's motion for summary judgment [doc. # 30] on Plaintiffs' claims against it is **PARTIALLY GRANTED** in that it is entitled to summary judgment on all claims except Plaintiffs' claims under the FDCPA.

It is further **ORDERED** that Defendant shall submit a brief **no later than 4:30 p.m. on Friday, August 31, 2012**, that is no longer than five (5) pages in length and sets forth its position, supported by legal authority, regarding whether it qualifies as a "debt collector" under the FDCPA. The Defendant shall include evidence that clearly indicates its relationship with Plaintiffs, including

exactly when it obtained its ownership interest, if any, in Plaintiffs' original note and deed of trust regarding the property in question.

It is further **ORDERED** that Plaintiffs shall submit a response to Defendant's brief no later than **4:30 p.m. on Friday, September 7, 2012** that is no longer than five (5) pages in length.

SIGNED August 21, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

17